# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHARGE ENTERPRISE, INC.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 24-10349 (TMH)<br><br>Hearing Date: April 17, 2024, at 3:00 p.m. (ET)<br><br>Re: Docket No. 162 |

**AMPED I, LLC AND AMPED II, LLC'S OBJECTION TO KORR'S EMERGENCY MOTION TO (I) ADJOURN CONFIRMATION HEARING AND (II) SCHEDULE CERTAIN DATES AND DEADLINES IN CONNECTION WITH CONFIRMATION OF THE DEBTOR'S PLAN PURSUANT TO BANKRUPTCY CODE SECTION 105(A) AND BANKRUPTCY RULE 3020**

Amped I, LLC and Amped II, LLC, (collectively, "Arena") submit this objection to the *Emergency Motion to (I) Adjourn Confirmation Hearing and (II) Schedule Certain Dates and Deadlines In Connection with Confirmation of the Debtor's Plan Pursuant to Bankruptcy Code Section 105(A) and Bankruptcy Rule 3020* [ECF No. 162] (the "Motion") that KORR Acquisitions Group, Inc., KORR Value L.P., and Kenneth Orr (collectively, "KORR") filed in the above-captioned debtor and debtor in possession (the "Debtor" or "Company") chapter 11 case. Arena states as follows in support thereof.

## OBJECTION

1. This Court should deny KORR's Motion to adjourn the confirmation hearing for the *Debtor's Combined Disclosure Statement and Prepackaged Chapter 11 Plan of Reorganization* [ECF No. 12] (as may be amended, modified, or supplemented from time to time, the "Plan") for four main reasons. ***First***, the Motion is premised on KORR's claim that KORR

---

[1] The last four digits of the Debtor's federal tax identification number are 1969. The Debtor's mailing address for purposes of the Chapter 11 Case is 125 Park Avenue, 25th Floor, New York, New York 10017.

has not yet received the necessary discovery from Arena and the Debtor. This is false.[2] **Second**, the Plan at issue is straightforward, and confirmation thereof is proceeding at an appropriate pace. The Plan preserves the Company as a going concern, was solicited prior to bankruptcy, was scheduled at the first day hearing without objection for a confirmation hearing on regular notice, and incorporates the consensual equitization of the Company's secured debt while gifting full recoveries to allowed, unsubordinated general unsecured creditors.[3] **Third**, KORR is weaponizing the chapter 11 process to extract value to which it is not entitled. It seeks to delay Plan confirmation—not for a legitimate purpose—but to try to evade liability for bona fide claims against it that are the subject of ongoing state court proceedings. And ***fourth***, the Plan meets all the requirements for confirmation, which the Debtor will show at the hearing scheduled for April 23 before this Court.

2. Starting with the first point, the Debtor and Arena have together already produced thousands of documents in response to KORR's requests for production.[4] KORR's assertion that it has "tried (unsuccessfully) to obtain necessary discovery to evaluate and, potentially challenge: (i) the appropriateness of the Plan releases granted to Arena; (ii) the good faith of the pre-arranged restructuring negotiated between the Debtor and Arena; (iii) the amount and validity of Arena's

---

[2] On April 12, 2024, Arena separately filed *Amped I, LLC and Amped II, LLC's Opposition to Emergency Motion of KORR Acquisitions Group, Inc., KORR Value L.P., and Kenneth Orr for Entry of an Order Compelling and Authorizing the Production of Documents by Charge Enterprises, Inc. and Arena Pursuant to Bankruptcy Rules 2004, 7026, and 9014* [ECF No. 176] (the "Arena Opposition") addressing the allegations raised in connection with KORR's motion to compel. The *Debtor's Objection to KORR Parties' Emergency Discovery Motion Pursuant to Bankruptcy Rules 2004, 7026, and 9014* [ECF No. 179] (the "Debtor Opposition") was filed the same day. Arena incorporates both herein by reference.

[3] However, holders of section 510(b) claims are not entitled to a distribution under the Plan. *See* Plan at 34.

[4] As set forth in the Debtor Opposition, the Debtor has produced over 2,500 documents totaling more than 15,000 pages. This includes communications with Arena. In response to the requests to Arena, which were entirely duplicative of requests made to Debtor, Arena has already produced its responsive internal non-privileged documents and communications totaling over 200 documents.

claim; and (iv) Debtor's valuation purporting to support the distribution of 100% of the equity to Arena" is untenable in light of the fact that it has received, among other things, everything necessary for its "investigation" of the Plan prior to confirmation. *See* Motion ¶ 3. Specifically, the volumes of information already produced to KORR include the following: all agreements underlying Arena's debt and equity positions, communications between Arena and the Debtor (and their counsel) related to the RSA[5] and their efforts to refinance and/or extend the maturity of the Arena Notes, all default notices, default letters, foreclosure notices, all non-binding term sheets referenced in the November 2023 8-K and KORR's Motion, non-privileged board minutes and materials, forward looking business plan, forecasts, and projections from January 1, 2023, non-privileged communications with the Debtor's financial advisor, Piper Sandler, related to the Plan, documents sufficient to identify the Debtor's principal assets, any submissions of interest generated by the marketing process, and communications between the Debtor, Arena, and BRG, the Debtor's financial advisor, concerning the cash flow forecasts and financial performance and liquidity of the Debtor since the Petition Date.

3. Arena began producing documents on April 9, 2024, after lengthy meet and confers with KORR's counsel on its discovery requests that resulted in KORR agreeing to narrow and withdraw many of the duplicative requests propounded on Debtor. Arena has honored the agreement reached by the parties and has completed productions using KORR's own search terms.[6] Therefore, in addition to all communications between Arena and Debtor already produced

---

[5] Capitalized terms used but not defined herein have the same meaning ascribed to such term as in the Plan.

[6] In addition to the search terms provided by KORR, Arena further conducted a search for all communications with "Charge" from August 1, 2023, to the Petition Date and produced any further responsive, non-privileged communications. On April 10, 2024, KORR served two additional discovery requests on Arena seeking documents and communications related to any trade or sale of the Debtor's debt or equity. As confirmed to KORR, Arena has not sold or traded any debt and equity and therefore no such documents exist. *See* Exhibits C and D.

by Debtor, Arena has now produced to KORR, among others, all non-privileged internal Arena communications related to the foreclosure, RSA, and Arena and the Debtor's refinancing efforts and efforts to extend maturity. As detailed in the Arena Opposition to KORR's 2004 Motion, Arena maintains its objection to a narrow set of requests (Requests 13-17) that do not relate to the Plan but are instead based on KORR's disputed proof of claim and violate the pending proceeding rule. For reasons also stated below, these outstanding discovery requests are irrelevant to confirmation and should not serve as a basis for adjourning the hearing.

    4.    KORR's contention that the "importance of [its] investigation is magnified by the absence of any official committee" is a red herring. Motion ¶ 4. This is a pre-packaged Plan that pays allowed unsubordinated unsecured claims in full, which makes an official committee of unsecured creditors unnecessary. The restructuring transaction contemplated under the Plan enables a swift emergence from chapter 11 and preserves the business, jobs, and livelihoods of the Debtor's employees – all without needing to shorten any of the statutorily required notice periods. KORR's attempt to derail confirmation of the Plan is without justification, as its disputed proof of claim is based on allegations that arise from a private market securities transaction between KORR and Andrew Fox in his individual capacity—an agreement to which Debtor was not a party and which Mr. Fox never executed—and does not give rise to an enforceable claim against the Debtor. *See* Proof of Claim No. 10002. In any event, the claim plainly arises from the purchase and sale of the Debtor's common stock and thus, even if allowed (which it should not be), would be subject to subordination under section 510(b) of the Bankruptcy Code and without recovery under the Plan. *See* 11 U.S.C. § 510(b); Plan at 34. And if KORR believes the estate possesses meaningful claims against Arena, then it will have the opportunity to contest the Debtor's settlement of any such claims at the confirmation hearing.

5. Importantly, the Plan enjoys broad consensus. Only one other common equity holder has objected to confirmation, which parrots some of the baseless assertions that KORR has made in this case. No other general unsecured creditor or equity holder has done so. And Island Capital – a large equity holder with priority over the holders of Common Stock – supports the Plan and has reached an agreement with Arena that gifts Island Capital with warrants post-emergence. If Island Capital believed there were more value to be had or estate claims against Arena that would justify derailing confirmation, then it too would oppose confirmation of the Plan. However, it is not. And tellingly, the U.S. Trustee has declined KORR's request to appoint an equity committee. Arena's support and contributions to the restructuring process (including a new money debtor-in-possession financing facility) are necessary for the Debtor's go-forward business; and without its support and contributions, there is a substantial likelihood of this case ending in liquidation, resulting in no value for other creditors.

6. There is no need to mince words about KORR's role in all of this: it was a bad actor who set in motion the events leading up to this chapter 11 case. KORR perpetrated a scheme that resulted in nearly $10 million of the Debtor's cash being unavailable to repay Arena's debt when it matured in November 2023. An extensive and protracted investigation into the missing funds revealed colorable and bona fide claims (indeed, the state court issued an injunction finding likelihood of success on the merits) that the Debtor has asserted in its complaint against KORR filed on January 8, 2024, *Charge Enterprises, Inc. v. Kenneth Orr, et al.*, Index No. 650109/2024. The Debtor is seeking at least $15 million in damages for claims, unjust enrichment, constructive trust, conversion, and fraud in the inducement based on KORR's, malfeasance, misconduct, and wrongdoing. *See* Complaint, attached hereto as **Exhibit A**; Temporary Restraining Order, attached hereto as **Exhibit B**.

7.　　　Lastly, Arena believes that the Debtor can satisfy its burden under section 1129 of the Bankruptcy Code at the April 23 confirmation hearing.  KORR is proposing a schedule that seeks to hold confirmation after May 21, 2024, and after a lengthy schedule that contemplates an unnecessarily drawn-out period for discovery.  It is clear from KORR's actions throughout this chapter 11 case that its strategy is to use the power of litigation to besmirch the Debtor and Arena with false allegations, undermine the restructuring transaction that was negotiated at arm's length, and generate an extensive professional fee burn in a small, pre-packaged case.  This is all with the goal of bludgeoning the Debtor and Arena into submitting to KORR's demands – and continuing its ongoing indifference to the consequences of its actions on the lives and wellbeing of the Debtor's employees, vendors, and customers.  At bottom, KORR wants to inflict pain on the Debtor sufficient to extract a release of its $15 million lawsuit against it.  This type of litigation tactic should not be countenanced.  The Motion should be denied.

*Remainder of Page Left Blank Intentionally*

Respectfully submitted,

Wilmington, Delaware
April 15, 2024

By: /s/ *Amanda R. Steele*
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Emily R. Mathews (No. 6866)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: 302-651-7700
Facsimile: 302-651-7701
Email: heath@rlf.com
      steele@rlf.com
      mathews@rlf.com

-and-

Harrison Denman (admitted *pro hac vice*)
Laura Garr (admitted *pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-819-8200
Facsimile: 212-354-8113
Email: harrison.denman@whitecase.com
      laura.garr@whitecase.com

-and-

Trudy Smith (admitted *pro hac vice*)
WHITE & CASE LLP
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
Telephone: 302-371-2700
Facsimile: 205-358-5744
Email: trudy.smith@whitecase.com

*Counsel to Arena*