**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CHARGE ENTERPRISES, INC. | Case No. 24-10349 (TMH) |
| Debtor. | **Related Document No. 328** |

**REPLY IN SUPPORT OF MOTION OF CRAIG DENSON, LEAH SCHWELLER**
**TO ENFORCE THE CHAPTER 11 PLAN AND CONFIRMATION ORDER**

1.      Craig Denson and Leah Schweller (collectively, the "D&O Parties") hereby submit this Reply in Support of their Motion to Enforce the Plan and Confirmation Order (each as defined below).  The D&O Parties, by and through their undersigned counsel, respectively represent as follows.

**PRELIMINARY STATEMENT**

1.      The Arena Plaintiffs do not dispute that, at least 30 days before they brought litigation against the D&O Parties, they were obligated to send the D&O Parties an "Arena D&O Demand Letter" which "set[] forth in reasonable detail (i) the factual and legal basis for the Arena D&O Claims to be pursued in such action and (ii) each Potentially Applicable Insurance Policy under which Arena has determined there may be coverage for such Arena D&O Claim, and the basis for such determination."  In their opposition to the D&O Parties' Motion, the Arena Plaintiffs do not dispute that they never sent the D&O Parties a letter containing those things.  Instead, they contend that the Plan's D&O Demand Letter requirement was satisfied by an email that their counsel sent to counsel for the debtor nearly two months before the plan was approved, attaching

1

a draft letter from directors and officers to a D&O Insurance Carrier notifying the carrier about potential claims that shareholders and creditors might assert at some point in the future.

2.      The Arena Plaintiffs' argument is frivolous.  The email and letter they rely on do not constitute an "Arena D&O Demand Letter" as that term is defined in the Plan, and no reasonable lawyer could believe that they do.  The only issue meaningfully disputed before the Court is the appropriate remedy for the Arena Plaintiffs' willful violation of the plan—a plan they helped write.  Given the intentional, bad-faith nature of Arena Plaintiffs' violation, the harm that has resulted from their conduct, and their continued bad-faith conduct since the D&O Parties filed their motion, this Court should order dismissal with prejudice of the action that the Arena Plaintiffs filed against the D&O Parties in direct violation of the Plan.

## ARGUMENT

### The Arena Plaintiffs Violated § 5.1(f) of the Plan

3.      The Arena Plaintiffs do not dispute that they were required, under § 5.1(f) of the Plan, to send an "Arena D&O Demand Letter" at least 30 days prior to filing any action against a director or officer.

4.      Rather, the Arena Plaintiffs claim that they "fully complied with" § 5.1(f) when Laura Garr, counsel for Arena, sent Mike Gustafson, former counsel for the Debtor, the following one-sentence email and an accompanying draft document named "Charge DO Notice of Circumstances.docx" on March 8, 2024 (the "Garr Email"):

**From:** Garr, Laura
**Sent:** Friday, March 8, 2024 3:54 PM
**To:** Gustafson, Mike (External) <mike.gustafson@faegredrinker.com>
**Cc:** Denman, Harrison <harrison.denman@whitecase.com>; Gold, Eric M. <eric.gold@pillsburylaw.com>
**Subject:** Charge DO Notice of Circumstances.docx

Gus,

No way you are looking at this right now as the First Day Hearing is still ongoing, but subject to client sign off, attached is proposed language for the Insureds to send to carrier under Wrongful Act

5.    The attachment is a draft letter to an insurance carrier, XL Specialty Insurance Company (the Carrier"), notifying the carrier of "circumstances that may give rise to a claim under" the D&O Policy (the "Draft Letter").  The Draft Letter, in its entirety (except for a footnote identifying the "current Directors" and "current Officers"), is quoted below:

> Dear Claims Manager:
>
> On behalf of your Insureds—the current Directors and Officers of Charge Enterprises, Inc. ("Charge" or "the Company")—please consider this as written notice of the following circumstances that may give rise to a claim under the above-referenced policy.
>
> On March 7, 2024, the Company filed a voluntary petition for protection under Chapter 11 of the U.S. Bankruptcy Code. As detailed in the Company's enclosed Declaration of Craig Harper-Denson, the Company's bankruptcy was preceded by liquidity issues caused by the investment of Company funds by KORR Acquisitions Group, Inc. ("KORR"), the Company's failure to pay certain notes held by lenders to the Company and alleged defaults thereunder, and a threatened foreclosure sale of the Company's equity interests in certain of its subsidiaries and other assets.
>
> While the Insureds expressly deny having committed any errors, misstatements, misleading statement, act, omission, neglect, or breach of duty in their capacities as Directors or Officers, creditors and shareholders of the Company may allege that: (i) the Insureds breached their fiduciary duties to the Company, (ii) failed to maintain appropriate controls and oversight of the Company's investments, (iii) allowed the Company to make material misstatements to public investors; (iv) caused the Company to incorrectly warrant to investors that Company funds were invested in cash or cash equivalents; and (v) caused the Company to violate certain loan covenants.
>
> The Insureds first became aware of these circumstances beginning [on November 13, 2023], when they learned that Company funds managed by KORR were not invested in cash or cash equivalents and were not readily liquated in order to satisfy the Company's current liabilities to its lenders. The Insureds are unable at this time

to estimate the total amount of potential damages. We will keep you apprised if any Claims arise out of the above circumstances.

Sincerely,

[Chairman of the Board?]

*See* Affirmation of Laura Garr, Ex. C [D.I. 338-1].

6.     The Arena Plaintiffs, in their response, assert, without offering any supporting evidence, that the directors and officers received the Draft Letter on March 12, 2024 and "submitted it to the applicable insurer on or before March 20, 2024." Upon information and belief, not all of the directors and officers received a draft letter. However, a version of the Draft Letter was submitted to the Carrier in March 2024.

7.     But neither the Garr Email nor the Draft Letter come anywhere close to satisfying the requirements of § 5.1(f), as illustrated in the following table:

| What the Plan Required | How the Arena Plaintiffs Allegedly "Complied" |
|---|---|
| "At least 30 days prior to commencing an action against a D&O with respect to any Arena D&O Claims, Arena shall send the [director or officer] a letter…" | Arena sent, to bankruptcy counsel for Charge, a draft letter addressed to the insurance carrier.. |
| "…setting forth in reasonable detail (i) the factual and legal basis for the Arena D&O Claims to be pursued in such action…" | Arena briefly listed five potential theories that "creditors and shareholders of the Company may allege." Arena does not identify any claims in the letter that *Arena* intends to allege. Arena also does not list the fraudulent inducement and fraudulent misrepresentation theories which form the first three counts of their Complaint in the New York Action. |
| "…and (ii) each Potentially Applicable Insurance Policy under which Arena has determined there may be coverage for such Arena D&O Claim, and the basis for such determination…" | Arena's draft letter effectively identifies the insurer, but says nothing about the "basis for" Arena's determination that "there may be coverage for such Arena D&O Claim." |
| "…(the "Arena D&O Demand Letter")…" | The draft letter is not a "demand letter," but a notice to the carrier of circumstances that might give rise to a claim under the D&O policy. |

4

8.      The Arena Plaintiffs thus failed to comply with the express requirements of

§ 5.1(f).  They make no effort to explain how the Draft Letter complies in any way with § 5.1(f),

presumably because they are well aware it did not..  Notably, the Draft Letter that the Arena

Plaintiffs rely on implements an entirely different provision of the Plan, namely, section 10.1(g).

9.      Section 10.1(g) of the Plan makes a condition precedent to the plan going into

effect that "[t]he Ds & Os shall have provided notice to the Insurers under the D&O Liability

Insurance Policies, in a form and manner Reasonably Acceptable to Arena, of potential claims

arising during the policy periods of such policies."  [D.I. 266 § 10.1].

10.     The language of Section 10.1(g) is nearly identical to the following language in a

part of the Plan Term Sheet listing "conditions precedent to confirmation and the Effective Date

[of the Plan]":  "That Ds & Os (as defined below) shall have provided notice to the insurers

under the Debtor's D&O Insurance Policies (as defined below), in a form and manner

Reasonably Acceptable to Arena, of potential claims arising during the policy periods of such

policies."  [D.I. 338-1 at 6].

11.     *The Arena Plaintiffs' themselves admit* that the purpose of the Draft Letter was to

satisfy the condition precedent to the Effective Date of the Plan contained in the Plan Term Sheet

which contains language almost identical to § 10.1(g).  It is thus undisputed that the function of

the Draft Letter (and the version of it that was ultimately sent to the Carrier) was to satisfy the

condition precedent to the Plan's Effective Date set forth in § 10.1(g) and in article III of the Plan

Term Sheet.  It is also undisputed that the Notice Letter in fact satisfied this condition precedent.

12.     As explained above, the Draft Letter attached to Ms. Garr's email satisfies none

of § 5.1(f)'s requirements for a D&O Demand Letter.  By contrast, the Draft Letter directly

satisfies § 10.1(g)'s requirements.  To begin with, the Draft Letter is from a director or officer, rather than the Arena Plaintiffs.  The Letter is addressed to the Carrier—not the D&O Parties—and explains that its purpose is to provide "written notice" of circumstances "that may give rise to a claim."  Moreover, the Draft Letter indicates that claims that may be asserted by "*creditors and shareholders*" of the Company generally, rather than by the Arena Plaintiffs specifically.

13.  The Arena Plaintiffs do not mention § 10.1(g) in their opposition, arguing instead that the provision in the Plan Term Sheet that they rely on led to § 5.1(f) of the Plan. But they provide no evidence to support any connection between the provision in the Plan Term Sheet they rely on and § 5.1(f) of the Plan, and given the similarities between the Plan Term Sheet provision and § 10.1(g)—and the dissimilarities between that provision and § 5.1(f), their argument is implausible on its face.

14.  The Arena Plaintiffs gesture at the "purpose" of § 5.1(f), which they claim was "to ensure that the insurer received notice of the claims."  The Arena Plaintiffs fail to cite any evidence supporting their claims about the "purpose" of § 5.1(f).  Nor do they offer any legal authority supporting the proposition that they can excuse their clear noncompliance with § 5.1(f) by invoking their incorrect and unsupported opinion about § 5.1(f) supposed purpose.

15.  The Arena Plaintiffs' assertions about the purpose of § 5.1(f) is belied by the plain terms of that section of the Plan.  Section 5.1(f) envisions an Arena D&O Demand Letter (a letter which, again, the Arena Plaintiffs never sent) not as some sort of stand-alone notice, but as the start of a process which involves multiple steps.  That process involves both the Arena Plaintiffs and the D&O Parties, and is aimed at obtaining a Final Coverage Determination from the Carrier in order to define the appropriate scope of any litigation between the Arena Plaintiffs and the directors and officers and effectuate the release of uninsured claims.

16.     Under § 5.1(f), a director or officer who receives an Arena D&O Demand Letter must "tender[]" the Letter "to the applicable Insurer(s) for a coverage determination with respect to such Arena D&O Claims."  If the Carrier denies coverage on an initial basis, "and there is a good faith basis to contest such denial, the D&O shall use reasonable efforts to seek a Final Coverage Determination with respect to such Arena D&O Claims."  Finally, a director or officer is not required to commence a coverage action against the Carrier unless Arena agrees, in writing, "to pay and fully indemnify and hold harmless the D&O from all costs and expenses in connection with the prosecution of such Insurance Coverage Action."

17.     The purpose of § 5.1(f) is thus not simply to put the insurer on notice, but to ensure that any litigation that the Arena Plaintiffs bring against directors or officers of the Debtor is limited to claims for which the Arena Plaintiffs can actually recover—i.e., claims covered by any applicable D&O Liability Insurance Policy.

18.     The Draft Letter—which simply identifies potential claims that may be asserted at some point in the future by unspecified shareholders or creditors—is not something that the D&O Parties could tender to the Carrier for a coverage determination.  Indeed, at the time the Draft Letter was sent to the Carrier, there was no actual claim that could be submitted to the insurer for a coverage determination.

19.     The Arena Plaintiffs assert, again without citing any evidence, that § 5.1(f) was "demanded by Arena."  Upon information and belief, § 5.1(f) was not "demanded by Arena," but was initially drafted by counsel for the Debtor.  Moreover, upon information and belief, the directors and officers specifically bargained for the procedure set forth in § 5.1(f) in exchange for giving up one half of their contractually-owed bonuses.[1]  As explained above, the Arena

---

[1] While the issue at hand is purely a legal matter based upon the terms of the Plan, Denson and Schweller note these contradictory circumstances to correct Arena's assertion that it demanded the provision.

Plaintiffs' contention that § 5.1(f) is somehow based on a provision in the Plan Term Sheet is baseless.

20.     Finally, the Arena Plaintiffs also suggest, yet again without citing any evidence, that § 5.1(f) was included to protect them.  The language of § 5.1(f), taken as a whole, serves not to protect any interest of Arena, but instead serves to ensure that the directors and officers would not have to sustain the financial and reputational harms associated with having to defend against claims that are not covered by any applicable D&O Liability Insurance Policy.  Given the release of the directors and officers for any uncovered liability to the Arena Plaintiffs, such uninsured claims stand no chance of success.

21.     By filing a publicly available Complaint which included claims for fraud that are plainly excluded from coverage under the terms of the Debtor's policy with the Carrier, the Arena Plaintiffs not only defied the plain terms of § 5.1(f), but frustrated that section's purpose as well, exposing the D&O Parties to reputational and economic harms from claims which have no hope of recovery and which should never have been pled.

22.     The Arena Plaintiffs indisputably failed to comply with the requirements of § 5.1(f) of the plan.  Its contrary arguments have no objectively reasonable basis in law and are unsupported by evidence.

**Ordering Dismissal with prejudice of the New York Action is Appropriate to Remedy Knowing, Bad-Faith Violation of the Plan**

23.     Arena offers several arguments regarding the remedy for the Arena Plaintiffs' clear and knowing violation.  Many of these arguments are based on their contention that they complied with the Plan, and because that contention is frivolous, so are the corresponding arguments on the appropriate remedy.  *See* Opp. ¶¶ 22, 24, 25.

24. Arena does raise one substantial independent argument—it disputes this Court's authority to sanction its violation of the plan by ordering dismissal with prejudice of the New York action.

25. Under Section 105 of the Bankruptcy Code, a bankruptcy court "may use its equitable powers to assure the orderly conduct of the reorganization proceedings." *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985). Moreover, bankruptcy courts have the inherent authority to sanction bad faith conduct of the attorneys and parties that appear before it. *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1224 (3d Cir. 1995).

26. Citing *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024), Arena argues that ordering dismissal of the New York action with prejudice "would in effect result in a de facto nonconsensual release of third-party claims against non-debtors, which is impermissible." [D.I. 338 ¶ 24]. This argument grossly overgeneralizes the holding of *Harrington*. *Harrington* "hold[s] only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." 144 S. Ct. at 2088. In addressing what provisions a Chapter 11 Plan may include, *Harrington* was interpreting § 1123(b) of the Bankruptcy Code, which sets forth "provision[s] that a debtor may include and a court may approve in a reorganization plan." *Id.* at 2018.

27. This case presents an entirely different issue—the authority of the bankruptcy court to sanction a willful and contumacious violation of a Chapter 11 Plan by a party that helped draft it. Section 1123(b) of the Bankruptcy Code has *nothing* to say about that authority.

28.     To be sure, there are limits on the sanction power of a bankruptcy court.  Most significantly, a court may not "override explicit mandates of other sections of the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421 (2015).  But Arena points to no "specific prohibition found elsewhere" in the Bankruptcy Code that precludes the relief the D&O Parties have requested.  *See id.*

29.     The sanction requested by the D&O Parties is the only appropriate remedy given Arena's bad-faith conduct, including its willful violation of the Plan and Confirmation Order, and its frivolous, objectively unreasonable attempt to whitewash its violation when it could—and should—have at least attempted to mitigate the harm that its violations of the plan worked on the D&O Parties.  *See Fellheimer*, 57 F.3d at 1225 (a bankruptcy court may impose inherent power sanctions upon a finding of bad faith).

30.     Arena should have responded to the D&O Parties' motion by voluntarily dismissing the New York Action and, if belatedly, following the procedures required in § 5.1(f) by serving a proper Arena D&O Demand Letter.  Had it followed that course of action, Arena would have a plausible and perhaps even persuasive argument that it has not acted in bad faith.

31.     But rather than admitting that it made a mistake by prematurely filing the New York action, Arena has doubled down and actively sought to aggravate the injuries that its noncompliance with the plan has caused to the D&O Parties.

32.     For one, the Arena Plaintiffs refused to consent to a stay of the New York action pending adjudication of the D&O Parties' motion in this Court to enforce the Plan and also refused to consent to the D&O Parties' request for even a one-week extension of their deadline to respond to the Arena Plaintiffs' Complaint.

33.     Moreover, the Arena Plaintiffs have opposed the D&O Parties' Motion in this Court by advancing the frivolous argument that the Garr Email and Draft Letter qualify as a "D&O Demand Letter" under § 5.1(f) of the Plan, forcing the D&O Parties to incur further expense in litigating this motion.

34.     As a direct and foreseeable result of the Arena Plaintiffs' knowing violation of the Plan and Confirmation Order, the D&O Parties have been exposed not only to litigation expense from which the Plan sought to protect them, but also to irreparable reputational harm.  The most appropriate sanction is to order the dismissal of the New York Action with prejudice.  In the alternative, an award of fees incurred by the D&O Parties as a result of the Arena Plaintiffs' misconduct is appropriate.

## CONCLUSION

WHEREFORE, the D&O Parties respectfully request that the Court enter an order (a) finding that the Arena Plaintiffs knowingly failed to comply with § 5.1(f) of the Plan in bringing the New York Action; (b) enjoining the Arena Plaintiffs' prosecution of the New York Action; and (c) ordering the Arena Plaintiffs to dismiss the New York Action with prejudice.  In the alternative to directing dismissal with prejudice, the Court should at a minimum enjoin the Arena Plaintiffs from filing any other action against the D&O Parties without first complying with the procedures required by § 5.1(f) of the Plan.

Dated:  October 7, 2024                    McCARTER & ENGLISH, LLP
        Wilmington, Delaware

                                           By: /s/ Kate Roggio Buck
                                           Kate Roggio Buck (No 5140)
                                           405 N. King Street, 8th Floor
                                           Wilmington, DE 19801
                                           Telephone (302) 984-6300
                                           Facsimile (302) 442-4710
                                           kbuck@mccarter.com