## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHARGE ENTERPRISES, INC.[1], | Case No. 24-10349 (TMH) |
| Debtor. | |

### MEMORANDUM OPINION AND ORDER

Before the court are (a) the Reorganized Debtor's Second Omnibus (Substantive) Objection Seeking to (I) Disallow and Expunge Certain Claims on No Liability Grounds and (II) Reduce and Allow Certain Claims in the Modified Amounts (the "Second Omnibus Objection"),[2] (b) Bell Canada's Motion for Leave to Amend Proof of Claim (the "Motion for Leave to Amend"),[3] and (c) the Reorganized Debtor's Motion to Quash Bell Canada's Request to Produce Documents and For a Protective Order (the "Motion to Quash").[4]

In its Second Omnibus Objection, the Reorganized Debtor, Charge Enterprises, Inc. ("Charge"), objects to 382 Communications' and Bell Canada's proofs of claim and asks this court to disallow them. In Bell Canada's Motion for Leave to Amend, it seeks leave to amend its initial proof of claim to explain and support its alter ego theory of liability. Through its Motion to Quash, Charge seeks

---

[1] The Reorganized Debtor in this case, along with the last four digits of the Debtor's federal tax identification number, is Charge Enterprises, Inc. (1969). The Debtor's address is 125 Park Avenue, 25th Floor, New York, New York 10017.

[2] D.I. 325.

[3] D.I. 405.

[4] D.I. 363.

to quash Bell Canada's request for production of certain documents in connection with its claim.

Because neither 382 Communications nor Bell Canada met its initial burden of proof in its respective proof of claim, the Second Omnibus Objection regarding their proofs of claim are sustained. Furthermore, this Court denies Bell Canada's Motion for Leave to Amend its proof of claim because the motion was filed after the bar date, the proposed amendment asserts a new claim, and the equitable considerations weigh in favor of denying the motion. Because Bell Canada's proof of claim is disallowed, Charge's Motion to Quash is moot.

## I.    Background

On March 7, 2024, Charge filed a petition in this Court under chapter 11 of the Bankruptcy Code. In its petition, Charge described its business as an "[e]lectrical, broadband [and] electrical vehicle charging infrastructure co[mpany] that provides clients w[ith] end-to-end project [management] services."[5] Just over one month later, on April 24, 2024, this Court confirmed[6] Debtor's Combined Disclosure Statement and Prepackaged Chapter 11 Plan of Reorganization ("the Plan").[7]  The plan went effective on May 3, 2024.[8]

---

[5] D.I. 1.
[6] D.I. 255.
[7] D.I. 12.
[8] D.I. 255; D.I. 275.

Under the Plan, creditors were required to file their proofs of claim by June 3, 2024 (the "Bar Date"), which was thirty days after the Plan's effective date.[9] On August 27, 2024, Charge filed the Second Omnibus Objection.

a.  The 382 Communications Proof of Claim

382 Communications included with its proof of claim various invoices that identified the account holder as "Ptgi."[10] Additionally, 382 Communications included its Reciprocal Terminations Agreement (the "382 Agreement"), which listed the parties as 382 Communications and "PTGi-ICS." The signatories on the 382 Agreement were 382 Communications' CEO and PTGi's then-CEO. Lastly, 382 Communications attached to its proof of claim court documents from a case it filed against PTGi and Charge in the Superior Court of Norfolk in Massachusetts on January 25, 2024. In its complaint in that case, 382 Communications alleged that Charge was a successor-in-interest to PTGi and was thus liable for PTGi's debts to 382 Communications.

b.  The Bell Canada Proof of Claim

Bell Canada included with its proof of claim a letter summarizing the amounts owed to it and three invoices. The letter identified the amounts owed, but recited that "PTGi owes to Bell [Canada]" such amounts, while also captioning the letter as a "Statement of Account Supporting Bell Canada's claims of $1,519,659.82

---

[9] D.I. 266.
[10] According to 382 Communications, PTGi International Carrier Services, Inc. ("PTGi") is a subsidiary of Charge. 382 Communications alleged that Charge acquired PTGi in November 2020. See 382 Communications' First Objection to Reorganized Debtor's Second Omnibus Objection Seeking to Disallow and Expunge Certain Claims on No Liability Grounds (the "382 Communications' Response") [D.I. 357] at 2. A separate Chapter 7, involuntary bankruptcy case has since been filed against PTGi in this court. See Case No. 24-12603 (TMH).

USD owed by Debtor 24-10349 Charge Enterprises, Inc., Parent of PTGi International Carrier Services Inc." The invoices were addressed to "PTGi International Carrier Services, Inc." as the apparent account holder and debtor.

c. The Second Omnibus Claims Objection

Charge objected to 382 Communications' and Bell Canada's claims because PTGi was the debtor, not Charge. In this Second Omnibus Objection, Charge argued that, because the debts are owed by a non-debtor affiliate of Charge, 382 Communications' and Bell Canada's claims are not prima facie valid, and Charge is not liable for those claims.       d. 382 Communications' Response

In 382 Communications' response to Charge's Second Omnibus Objection ("382 Communications' Response"), it alleged that Charge acquired PTGi in November of 2020 and that, therefore, Charge was liable for PTGi's debts to 382 Communications. It then requested that this Court overrule Charge's Second Omnibus Objection.

e. Bell Canada's Response

In Bell Canada's response to the Second Omnibus Objection ("Bell Canada's Response"),[11] it argued that under an alter ego theory, Charge and PTGi were not separate corporate entities. It claimed that Charge freely used PTGi's assets without regard to corporate formalities or appropriate documentation. It further argued that Charge should not be allowed to use the "pretense of corporate

---

[11] Bell Canada's Response to the Reorganized Debtor's Second Omnibus (Substantive) Objection Seeking to (I) Disallow and Expunge Certain Claims on No Liability Grounds and (II) Reduce and Allow Certain Claims in the Modified Amounts [D.I. 365].

separateness" to avoid its liability for PTGi's debts to Bell Canada. Bell Canada

requested that this Court overrule the Second Omnibus Objection. It also asked

that this Court deem its claim amended by incorporation of the facts, declarations,

and arguments set forth in its response, and it requested that this Court permit it

to conduct discovery relevant to show Charge is liable under an alter ego theory.

f.   The Motion to Quash

Around the same time, Bell Canada also served its First Set of Requests for

Production to Charge Enterprises (the "RFP")[12]. Charge filed the Motion to Quash

the RFP contending it was served on the wrong entity (Charge, as opposed to the

"correct" entity, PTGi), rendering the RFP not relevant or proportional, as required

by Federal Rule of Civil Procedure 26(b)(1), made applicable here by Bankruptcy

Rules 7026 and 9014. Alternatively, Charge sought a protective order for good cause

shown under Federal Rule of Civil Procedure 26 because the harm caused by the

disclosure would outweigh Bell Canada's need for the disclosure.

g.   The Motion for Leave to Amend

Finally, the day after this Court's hearing on the proofs of claim and the

Second Omnibus Objection, Bell Canada filed its Motion for Leave to Amend.

Charge objected in Reorganized Debtor's Objection to Bell Canada's Motion for

Leave to Amend Proof of Claim (the "Objection to Motion for Leave to Amend"),[13]

arguing that Bell Canada should not be allowed to amend its proof of claim because

---

[12] D.I. 344; D.I. 363-2.
[13] D.I. 420.

it attempted to do so months after the bar date and a balance of the relevant factors weighs against allowing leave to amend.

## II.    Jurisdiction

This Court has subject matter jurisdiction over these matters through 28 U.S.C. 157 and 1334. These matters are also all core proceedings pursuant to 28 U.S.C. 157(b)(2) because they concern the administration of the estate and/or the allowance or disallowance of claims against the estate.

## III.    Analysis

As to 382 Communications' and Bell Canada's proofs of claim, this Court sustains the Second Omnibus Objection. It finds that neither 382 Communications nor Bell Canada met its burden of proof. Additionally, the Court denies Bell Canada's Motion for Leave to Amend because it was filed four months after the bar date, it asserted a new claim, and a balancing of the factors weighs in favor of denying leave to amend. Accordingly, the Motion to Quash is rendered moot.

### A. Proofs of Claim

Under Bankruptcy Code section 502(a), "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, . . . objects." Throughout the proof of claim process, the burden may shift between the claimant and the objector multiple times.  A proof of claim is prima facie valid when the claimant alleges facts sufficient to support the claim.[14] Once a claimant has met this standard, the burden shifts to any objectors to "produce evidence sufficient to

---

[14] Fed. R. Bankr. Proc. 3001(f); *see In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

negate the prima facie validity of the filed claim" that is "equal in force to the prima facie case" and that, "if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."[15] If an objector meets this standard and successfully refutes an allegation that is essential to the claim's legal sufficiency, then the burden shifts back to the claimant to prove the claim by a preponderance of the evidence.[16]

Because 382 Communications and Bell Canada are the claimants, the initial burden to allege facts sufficient to support the claim (as well as the burden of persuasion) is on them. If either party meets that burden and establishes a prima facie claim, then Charge, as the objector, has the burden to refute a legally significant allegation. If Charge successfully does so, then the burden shifts back to 382 Communications and Bell Canada. However, the burden shifting need not get that far here, as both claimants fail on the first step.

### 1. 382 Communications' Proof of Claim

As a claimant, 382 Communications bears the initial burden of proving its claim. Charge argued that it did not meet that initial burden; this Court agrees.

In meeting its initial burden, 382 Communications must have alleged "facts that, if true, would support a finding that the *debtor* [Charge] is legally liable to the claimant."[17] However, it did not allege sufficient facts to support a finding that

---

[15] *Id.* 173-74; *see also VFB LLC v. Campbell Soup Co.*, 482 F.3d 634, 637 (3d Cir. 2007) (quoting *id.*). However, the "burden of persuasion is always on the claimant." *In re Allegheny Int'l, Inc.*, 954 F.2d at 174; *accord In re Merritt*, 702 Fed. Appx. 90, 94 (3d Cir. 2017).

[16] *See In re Allegheny Int'l, Inc.*, 954 F.2d at 173-74.

[17] *In re Stock Bldg. Supply LLC*, 433 B.R. 460, 464 (Bankr. D. Del. 2010) (emphasis added); *In re Wells*, 463 B.R. 320, 326 (Bankr. E.D. Pa. 2011) ("[I]f a proof of claim . . . is self-sustaining (i.e., it sets forth the facts necessary to state a claim and is not self-contradictory), it is prima facie valid[.]").

Charge was the party responsible for the alleged debt. It is true that 382 Communications attached to its proof of claim numerous invoices for services rendered, but the invoices identified PTGi as the account holder and did not mention Charge. Similarly, 382 Communications included in its proof of claim the 382 Communications Agreement, which it claims supports Charge's legal liability. Again, however, the agreement did not mention Charge. Even the signatories on the agreement were only from PTGi and 382 Communications.

Besides the invoices and the agreement, 382 Communications also attached to its proof of claim court documents from a lawsuit that it had filed against PTGi and Charge. In that lawsuit, it alleged that Charge was responsible for PTGi's liabilities, as it was PTGi's successor-in-interest. However, 382 Communications did not present further evidence that Charge inherited PTGi's liabilities, other than its explanation that it made the allegation "upon information and belief."[18] With no other evidence showing that Charge assumed PTGi's liabilities, the facts established in 382 Communications' proof of claim do not support a finding that Charge is legally liable to 382 Communications.[19] Therefore, because 382 Communications has not met its initial burden of proving that its claim is "self-sustaining[,]"[20] the claim must be disallowed.

---

[18] D.I. 357-A.
[19] *See In re Stock Bldg. Supply LLC*, 433 B.R. at 464 (explaining the standard a claimant must meet for their initial proof of claim).
[20] *In re Wells*, 463 B.R. at 326.

### 2. Bell Canada's Proof of Claim

Similarly, Bell Canada did not provide sufficient facts to support a finding that Charged owed it a debt. Bell Canada attached to its proof of claim various invoices for services rendered, but the invoices named only PTGi as the debtor. Even the letter that Bell Canada attached to its proof of claim did not provide any evidence or allegations to support any theory that Charge is liable for PTGi's debt to it. It certainly does not describe any theory of liability sounding in alter ego liability. The letter simply summarized what PTGi owes to Bell and then alleged that Charge, as "parent of PTGi[,]" owes Bell Canada that amount. Nothing in Bell Canada's proof of claim or its supporting documentation explains why Charge would be responsible for PTGi's debt, on what legal theory such responsibility should rest, or any facts that would support such a finding. Thus, as with 382 Communications, Bell Canada has failed to meet its burden of showing that Charge is legally liable to it, and therefore, its claim must also be dismissed.

## B. Bell Canada's Motion for Leave to Amend

Additionally, this Court denies Bell Canada's Motion for Leave to Amend because it was filed after the bar date, it asserted a new claim, and equitable considerations weigh in favor of denying it.

Allowing a party leave to amend its claim is "within the sound discretion" of the bankruptcy court.[21] Although courts usually liberally allow amendments to

---

[21] *Winer Family Tr. v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007) (applying Fed. R. Civ. Proc. 15); *accord Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518 (3d Cir. 1988) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Bankr. Proc. 7015 (explaining that Fed. R. Civ. Proc. 15 applies in

timely filed proofs of claim, "[a]mendments after the bar date are to be scrutinized very closely to [e]nsure that the amendment is in fact genuine and not an entirely new claim."[22] To determine when a court should allow a claimant leave to amend its claim after the bar date, courts first must examine whether the proposed amendment asserts a new claim.[23] Then, courts must weigh the equitable considerations in determining whether to deny the leave to amend.[24]

First, bankruptcy courts should deny leave to amend a claim when the proposed amendment asserts a new claim. In determining whether the proposed amendment is actually a new claim, courts consider whether there was a "timely assertion of a similar claim or demand evidencing an intention to hold the estate liable."[25] In other words, courts consider whether "the original claim provides notice of the existence, nature, and amount of the claim."[26] Courts may find that a proposed amendment is not a new claim "where the purpose is to cure a defect in the claim as originally filed, describe the claim with greater particularity or to plead

---

bankruptcy courts); *Marathon Asset Mgmt., LP v. Wilmington Tr., N.A. (In re Energy Future Holdings Corp.)*, 548 B.R. 79, 98 (Bankr. D. Del. 2016) (denying leave to amend because amendment would be futile, as the amended complaint would still fail to state a claim upon which relief can be granted).

[22] *In re W.T. Grant Co.*, 53 B.R. 417, 422 (Bankr. S.D.N.Y. 1985); *accord In re Metro Transp. Co.*, 117 B.R. 143, 147 (Bankr. E.D. Pa. 1990) (quoting *id.*).

[23] *Plains Mktg., L.P. v. Bank of Am., N.A. (In re SemCrude, L.P.)*, 443 B.R. 472, 477-78 (finding that the proposed amendment did not represent a new claim and thus allowing it).

[24] *In re Energy Future Holdings Corp.*, 619 B.R. 99 (Bankr. D. Del. 2020) (weighing the factors in *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993), to consider whether claimant should be allowed to amend their claim under an excusable neglect theory).

[25] *Midland Cogeneration Venture Lim. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005); *see also Acthar Ins. Claimants v. Mallinckrodt Plc (In re Mallinckrodt Plc)*, 2022 WL 3545583, at *3 (D. Del. Aug. 18, 2022) (quoting *id.*).

[26] *In re Orion Refining Corp.*, 317 B.R. 660, 664 (Bankr. D. Del. 2004).

a new theory of recovery on the facts set forth in the original claim."[27] Ascertaining
that a proposed amendment is, in truth, an amendment rather than a new claim
ensures that the "initial claim provided the trustee or debtor-in-possession with
reasonable notice of the later claim."[28]

Second, bankruptcy courts will deny leave to amend when the equitable
considerations weigh in favor of doing so. For this analysis, courts consider factors
such as "(1) prejudice to the debtor, (2) the length of the delay and its potential
effect on judicial proceedings, (3) the reason for the delay, including whether it was
in the movant's control, and (4) the movant's good faith."[29] However, these factors
do not necessarily carry equal weight. For example, in *In re Quinn*,[30] the court held
that, "if the party requesting amendment unduly delays in seeking that
amendment, a court may deem such delay preclusive."[31] In *In re B456 Systems,
Inc.*,[32] however, the court explained that "the critical consideration is whether the
opposing party will be unduly prejudiced by the amendment[,]"[33] whereas in *In re*

---

[27] *In re Metro Transp. Co.*, 117 B.R. at 147 (quoting *International Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985)).
[28] *In re Mallinckrodt*, 2022 WL 3545583, at *3 (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990).
[29] *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)); *see also In re Edison Bros. Stores*, No. 99-529, 2002 Bankr. LEXIS 1228, at *10 (Bankr. D. Del. May 15, 2002) (examining whether "there is undue delay, [the amendment is] motivated by bad faith, or [the amendment would be] prejudicial to [the] opposing party." (quoting *Hatzel & Buehler*, 150 B.R. 560, 562 (Bankr. D. Del. 1993))).
[30] *In re Quinn*, 423 B.R. 454 (Bankr. D. Del. 2009).
[31] *Id.* at 464.
[32] No. 12–12859, 2017 WL 6603817 (Bankr. D. Del. Dec. 22, 2017).
[33] *Id.* at *15.

*Nortel Networks, Inc.*,[34] the court explained that "the excuse for a late filing is most important."[35]

Turning to the first consideration, this Court finds that Bell Canada's proposed amendment asserts a new claim because it asserts a new legal theory that would require supporting facts that are not set forth in Bell Canada's proof of claim. In Bell Canada's Response,[36] which it filed a week before the hearing and over four months after the bar date, it argued for the first time that PTGi is an alter ego of Charge, making Charge liable for PTGi's debt to Bell Canada. The day after the hearing, Bell Canada also filed its Motion for Leave to Amend, which asked this Court to allow Bell Canada leave to amend its original proof of claim to assert the alter ego theory and any facts necessary to establish that theory. Bell Canada even admitted in its Response that its original proof of claim did "not expressly assert Charge's liability under an alter ego or other theory."[37] In fact, in its proof of claim, Bell Canada included three invoices that identified PTGi as the account debtor and a letter stating that Charge was responsible for PTGi's debt. Nowhere in the initial proof of claim did Bell Canada mention an alter ego theory or any other theory as to why Charge would be responsible for PTGi's debt.

---

[34] 573 B.R. 522 (Bankr. D. Del. 2017).
[35] *Id.* at 528.
[36] Although Bell Canada filed its response before filing its Motion for Leave to Amend, it also included a request in its response that this Court incorporate its arguments into its initial proof of claim. Additionally, in its Motion for Leave to Amend and during oral argument, Bell Canada espouses similar arguments to what it asserted in its response. Therefore, because of their similarities and because both were filed well after the bar date, I consider the amendment of the arguments in the response and the Motion for Leave to Amend together.
[37] D.I. 365.

Furthermore, to establish an alter ego theory, Bell Canada would need to add new facts to its proof of claim that show why Bell Canada and PTGi are a single entity, as there are no factual allegations in Bell Canada's proof of claim that would support such a finding. Bell Canada seemed to recognize this infirmity because it served the RFP on Charge, seeking discovery to try to establish an alter ego theory.[38] To give Charge sufficient notice of the nature of the claim, allegations of an alter ego theory should have already been present in the proof of claim. Thus, Bell Canada cannot argue that the proposed amendment simply "cure[s] a defect in the claim as originally filed, [describes] the claim with greater particularity or [pleads] a new theory of recovery on the *facts set forth in the original claim*." [39]

In *In re Mallinckrodt Plc*, the United States District Court for the District of Delaware affirmed this Court's decision in denying leave to amend a claim.[40] The District Court held that the while the claimant argued the debtor was liable to it under an antitrust theory, the proof of claim did not sufficiently allege facts under that theory.[41] Thus, the proof of claim could not support a legal liability.[42] Similarly, here, Bell Canada's initial proof of claim did not present sufficient facts to allege an alter ego theory. Like the claimants in *Mallinckrodt*, Bell Canada simply "failed to allege activity by [the debtor]."[43] Bell Canada only included one mention of Charge in the supporting documents to its proof of claim, and that mention was a

---

[38] D.I. 420
[39] *In re Metro Transp. Co.*, 117 B.R. at 147 (quoting *International Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985)).
[40] 2022 WL 3545583.
[41] *Id.* at *3-*4.
[42] *Id.* at *4.
[43] *Id.* at *3.

conclusory statement that Charge was liable for PTGi's debts. It did not provide any other facts or allege activity by Charge that would support an alter ego theory of liability. Beyond that, Bell Canada did not even state that it was pursuing the claim based on an alter ego theory of liability. Therefore, like the claims in *Mallinckrodt*, Bell Canada's claim was "so deficient . . . that there were no claims asserted[,]" and Bell Canada cannot amend it.[44]

Even if Bell Canada did not know how to articulate the precise legal theory upon which it would be basing its claim, its failure to explain the nature of the claim and include facts on which the claim would be based is detrimental. Not knowing the law does not excuse a deficient filing.[45] The purpose of a proof of claim is to put the debtor on notice of the nature and basis of the claim, but Bell Canada's proof of claim failed to put Charge on notice of either the legal theory or the requisite facts on which the theory was based.[46]

Turning to the second consideration, this Court finds there would be no significant prejudice to Charge if this Court granted Bell Canada's Motion for Leave to Amend. Charge urges the Court to find that it would be prejudiced if it had to litigate Bell Canada's claim on the merits. However, that fact alone is not enough to constitute prejudice to Charge, other than the length of the delay, which is a distinct consideration.

---

[44] *Id.* at *4.

[45] *In re Nortel Networks, Inc.*, 573 B.R. at 528 ("The law is clear: ignorance is not a sufficient reason to permit amendment.").

[46] *In re Mallinckrodt*, 2022 WL 3545583, at *3 (explaining that the purpose of ensuring the proposed amendment is a true amendment rather than a new claim is to protect the debtor's right to notice of the claims against them).

14

Bell Canada did unduly delay submitting its motion for leave to amend. It did not file its motion for leave to amend until four months after the bar date and the day after this Court had already held the hearing on the Second Omnibus Claims Objection.[47] It is true that Bell Canada included a theory of alter ego liability in its Response to Charge's Second Omnibus Objection, but it still filed that Response four months after the bar date.[48] Bell Canada apparently also informed Charge of the theory at a telephonic meeting on September 23, 2024, but nevertheless, that means that Charge would not have received notice of the actual nature of the claim until three and a half months after the bar date.[49] Taking that meeting as the earliest date on which Charge could have become informed,[50] there was still a significant delay after the bar date in the context of this case.[51] At that point, Charge had already objected to  Bell Canada's claim, among other claims..[52] Additionally, Charge's Plan had already gone into effect on May 3, 2024.[53] Therefore, Charge's notice of the nature of Bell Canada's claim was delayed in context of what Charge had already accomplished in the case, and Bell Canada's request for leave to amend was even more delayed.

---

[47] D.I. 405.

[48] D.I. 365.

[49] D.I. 420.

[50] *But see In re W.T. Grant Co.*, 53 B.R. 417,422 (Bankr. S.D.N.Y. 1985) ("[C]ourts have not allowed a creditor to file an amended proof of claim where the creditor had done nothing more than telephone the trustee and apprise him of the claim.").

[51] *In re Enron Corp.*, 419 F.3d at 128 ("[T]he lateness of a claim must be considered in the context of the proceeding as a whole.").

[52] Second Omnibus Objection [D.I. 325].

[53] D.I. 255; D.I. 275.

Even if four months is not a substantial delay, Bell Canada's excuse, or lack thereof, for its late filing also weighs in favor of denying the motion.[54] In its Motion for Leave to Amend, it says, "Bell acted reasonably and without delay as soon as it was made aware of the objection to the Claim in order to address the objection. Bell is filing this Motion to clarify the bases of the Claim against the Debtor."[55] However, as established above, Bell Canada is not merely responding to Charge's objection to cure some defect. It argues that it is attempting to "amend" its claim, but in truth, it is attempting to reimagine its claim to increase the likelihood that it states a claim for legal liability.[56] Thus, this excuse does not hold water because it merely recognizes Bell Canada's deficient initial filing. Further, at the hearing on the Motion for Leave to Amend, Bell Canada's witness, Casey Mak, who drafted the initial proof of claim, testified that he did not add more details to the filing because the form only allowed him to select from a list of prepopulated answers.[57] However, Bell Canada also submitted with its initial proof of claim a letter stating that Charge was liable for PTGi's debts; Bell Canada easily could have detailed why it believed Charge was liable for PTGi's debts in that letter. It also could have

---

[54] *In re Enron Corp.*, 419 F.3d at 128 ("[T]he evaluation of lateness should, at least to some extent, also take into account the creditor's explanation for the delay. Thus, a long delay . . . with a strong explanation might be more acceptable than a short delay with a weak explanation—even if both explanations are credible.").

[55] D.I. 405.

[56] *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000) ("[I]gnorance of one's own claim does not constitute excusable neglect." (internal quotations omitted)).

[57] 11/22/2024 Hearing Tr. 13-14.

included documents that might support an alter ego theory.[58] Accordingly, this excuse is unpersuasive, and the reason for the delay weighs against Bell Canada.

The final factor to be considered is Bell Canada's good faith. This Court finds that Bell Canada did act in good faith. There is no evidence of a dilatory motive or purposeful actions by Bell Canada to cause the delay or the defect in the initial proof of claim.[59] Nevertheless, because Bell Canada unduly delayed and did not provide a strong excuse for doing so,[60] the equitable considerations weigh in favor of denying the motion.

Accordingly, this Court denies Bell Canada's Motion for Leave to Amend.

**C. Charge's Motion to Quash**

Because this decision denies Bell Canada's Motion for Leave to Amend, grants Charge's Second Omnibus Objection regarding Bell Canada, and dismisses Bell Canada's claim, Bell Canada's RFP seeking discovery from Charge and Charge's related Motion to Quash are both moot.

**IV.   Conclusion**

For the foregoing reasons, this Court orders that: (i) Charge's Second Omnibus Objection regarding 382 Communications is sustained and 382 Communications' claim is disallowed; (ii) Charge's Second Omnibus Objection

---

[58] *Agassi v. Planet Hollywood Int'l, Inc.*, 269 B.R. 543, 550 (D. Del. 2001) (finding that the claimants properly asserted indemnification claims because they attached their indemnification contracts); *Plains Mktg., L.P.*, 443 B.R. at 478 (holding that the proposed amendments were not new claims because the claimant had already asserted them in the initial proof of claim by including various agreements that established its rights).
[59] *In re Nortel Networks, Inc.*, 573 B.R. at 528 (finding that the claimant made a "conscious, deliberate decision" to include the defect in their claim); *In re Energy Future Holdings Corp.*, 619 B.R. 99 (Bankr. D. Del. 2020) (finding that the delay was due to gamesmanship).
[60] *In re Nortel Networks, Inc.*, 573 B.R. at 527 (explaining the factors do not carry equal weight).

17

regarding Bell Canada is sustained and Bell Canada's claim is disallowed; (iii) Bell

Canada's Motion for Leave to Amend is denied; and (iv) Charge's Motion to Quash is

denied as moot.

Date: December 13, 2024
Wilmington, Delaware

Thomas M. Horan
United State Bankruptcy Judge