## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CHARGE ENTERPRISES, INC. ,[1] | Case No. 24-10349 (TMH) |
| Debtor. |  |

## MEMORANDUM OPINION AND ORDER

Before the court are Leah Schweller and Craig Denson's Motion to Enforce the Chapter 11 Plan and Confirmation Order (the "Motion to Enforce"),[2] which Andrew Fox[3] and Amy Hanson[4] join, and the Reorganized Debtor's first and third omnibus objections to proofs of claim.

In the Motion to Enforce, Leah Schweller and Craig Denson, joined by Andrew Fox and Amy Hanson (together, the "D&Os"), request that this Court enforce certain provisions of the Debtor's Combined Disclosure Statement and Prepackaged Chapter 11 Plan of Reorganization (the "Plan")[5] against Arena Investors, LP ("Arena") and its affiliates. Arena responded in its Omnibus Objection to the Motions to Enforce the Chapter 11 Plan and Confirmation Order ("Arena's Objection").[6] Because Arena did not comply with the requirements for notice under

---

[1] The Reorganized Debtor in this case, along with the last four digits of the Debtor's federal tax identification number, is Charge Enterprises, Inc. (1969). The Debtor's address is 125 Park Avenue, 25th Floor, New York, New York 10017.
[2] D.I. 328.
[3] D.I. 329.
[4] D.I. 372.
[5] D.I. 12.
[6] D.I. 338.

section 5.1(f) of the Plan, this Court holds that Arena violated the Plan, and it orders Arena to stay its New York state court proceedings until it complies with the Plan by issuing proper notice.

In the First Omnibus Objection to Claims (the "First Omnibus Objection"),[7] Charge requests that this Court subordinate claims from Craig Denson, Leah Schweller, and Andrew Fox (the "Potential Indemnitees") for indemnification under section 510(b) of title 11 of the United States Code (the "Bankruptcy Code"). Alternatively, Charge asks that the claims be disallowed on the grounds that it is not liable. In the Third Omnibus Objection to Claims (the "Third Omnibus Objection"),[8] Charge asks that the D&Os' claims for indemnification be disallowed as contingent claims under Bankruptcy Code section 502(e). This Court disallows the advancement claims but not the indemnification claims. The Court also finds that the indemnification claims should not be disallowed under Bankruptcy Code section 502(e). However, the Court also subordinates the indemnification claims under Bankruptcy Code section 510(b). Consequently, because the Plan does not provide recovery or distribution for such claims, the claims are canceled, released, and extinguished, as provided for in the Plan.

## I.    Background

On March 7, 2024 (the "Petition Date"), Charge filed a petition in this Court under chapter 11 of the Bankruptcy Code. In its petition, Charge described its business as "[e]lectrical, broadband [and] electrical vehicle charging infrastructure

---

[7] D.I. 324.
[8] D.I. 326.

co[mpany] that provides clients w[ith] end-to-end project [management] services."[9] Just over one month later, on April 24, 2024, this Court approved and confirmed[10] the Plan, and it went into effect on May 3, 2024.[11] Under the Plan, claimants were required to file their proofs of claim by June 3, 2024, which was thirty days after the effective date.[12] Section 510(b) Claims are classified under Class 5 of the Plan. The Plan provides that Section 510(b) Claims are "[c]anceled, released, and extinguished, and of be of no further force or effect, and the holder thereof shall receive no recovery or distribution under the Plan."[13]

On August 27, 2024, Charge filed the First Omnibus Objection and the Third Omnibus Objection.

### A. Facts Relating to the Motion to Enforce

On March 8, 2024, one day after Charge filed for bankruptcy, Arena sent an email (the "March 8th Email") to the counsel for Charge, attaching a letter for D&Os' insurer that explained the D&Os should expect to be sued. Charge's counsel then sent a copy of the letter to Craig Denson and Leah Schweller and confirmed that a copy of the letter had been sent to the insurers.

On June 26, 2024, Arena filed suit against the D&Os in the Supreme Court of New York County, New York (the "New York Suit"). In its complaint, Arena alleged fraudulent inducement/ misrepresentation, negligent misrepresentation, and breach

---

[9] D.I. 1.
[10] D.I. 255.
[11] D.I. 255; D.I. 275.
[12] D.I. 266.
[13] Plan § 1.8.

of fiduciary duty stemming from the D&Os' financial mismanagement, lack of corporate governance and oversight, misrepresentations of financial covenants and warranties, and abdication of their duties as directors and officers of Charge, resulting in millions of dollars of financial harm to Arena.

Under section 5.1(f) of the Plan, Arena was required to provide notice to the D&Os if it planned to commence an action against them:

> At least 30 days prior to commencing an action against a D&O with respect to any Arena D&O Claims, Arena shall send the D&O a letter setting forth in reasonable detail (i) the factual and legal basis for the Arena D&O Claims to be pursued in such action and (ii) each Potentially Applicable Insurance Policy under which Arena has determined there may be coverage for such Arena D&O Claim, and the basis for such determination (the "Arena D&O Demand Letter"), which shall be tendered by the D&O to the applicable Insurer(s) for a coverage determination with respect to such Arena D&O Claims.[14]

The D&Os contend that Arena did not comply with the Plan because it did not send them proper notice of its New York Suit against them. They argue that the letter sent to Charge's counsel was deficient in its notice because it did not contain sufficient information and it was sent to Charge's counsel rather than the D&Os directly. Because the notice did not comply with the Plan, the D&Os ask this Court to enforce the Plan by ordering the New York Suit be dismissed with prejudice.

Arena counters that its March 8th Email was sufficient to comply with the Plan's notice requirement and that there is no further action needed.

---

[14] Plan § 5.1(f).

### B. Facts Relating to the First and Third Omnibus Motions

Since the Petition Date, two actions have been brought against various directors and officers. In a complaint (the "Class Action") filed on May 28, 2024, in the United States District Court for the Southern District of New York, purchasers of Charge common stock alleged that Andrew Fox, Craig Denson, and Leah Schweller (the "Potential Indemnitees") made certain misrepresentations (that would be violations of sections 10(b) and 20(a) of the Securities Exchange Act) concerning Charge's relationship with KORR Acquisitions Group, KORR's control over Charge's assets, the nature of KORR's investments on Charge's behalf, and the adequacy of Charge's internal disclosure control..[15]

In the New York Suit brought June 26, 2024, by Arena, as explained above, secured creditors and equity holders alleged that the Potential Indemnitees (along with Amy Hanson)[16] committed fraudulent inducement/ misrepresentation, negligent misrepresentation, and breach of fiduciary duties. The New York Suit is pending in New York State Supreme Court.

---

[15] *Finkelstein v. Fox*, No. 1:24-cv-04056 (S.D.N.Y.).

[16] Although Ms. Amy Hanson joined the parties in the Motion to Enforce, she did not file a response to Charge's objections to her claim, and her claim has subsequently been disallowed. *See* Order Granting Reorganized Debtor's First Omnibus (Substantive) Objection Seeking to (I) Reclassify the Purported Indemnification Claims as Section 510(b) Claims or (II) Disallow and Expunge the Purported Indemnification Claims on No Liability Grounds [D.I. 401] and Revised Order Granting Reorganized Debtor's Third Omnibus (Non-Substantive) Objection Seeking to (I) Reclassify Shareholder Claims as Section 510(b) Claims and (II) Disallow and Expunge the (a) Duplicate Claims, (B) Amended or Superseded Claims, (C) Late Filed Claims, and (D) Section 502(e)(1) Claims [D.I. 403].

The Potential Indemnitees timely filed claims for advancement and indemnification of their reasonable costs and expenses in defending both the Class Action and the New York Suit.[17]

Charge objected to these claims by the Potential Indemnitees in its First and Third Omnibus Objections. In its First Omnibus Objection, Charge argues that the claims should be subordinated under Bankruptcy Code section 510(b). For each of the Potential Indemnitees' claims, Charge provides the same reason for the objection:

> This claim was filed by a former director or officer for indemnification in connection with the sale or purchase of stock, and, in any event, Charge is not obligated to indemnify the claimant under the supporting documents attached to the proof of claim or applicable nonbankruptcy law.[18]

Alternatively, it argues that the Potential Indemnitees did not meet the requirements for advancement or indemnification, specifically the requirements of an undertaking and an estimate of reasonable expenses for advancement, and thus, the claims should be disallowed.

---

[17] Mr. Denson's proof of claim appears on claims register as claim number 10016. Ms. Schweller's claim appears as claim number 10028. Mr. Fox's claim appears as claim number 10032.

[18] First Omnibus Claims Objection, Schedule 1. The claims are all but identical and are not models of clarity. Mr. Fox's and Mr. Denson's proofs of claim do not expressly state that the basis for the claim is advancement and indemnification (each of the claims simply state that the basis for the proof of claim is "Other Basis"). Ms. Schweller's claim identifies indemnification as the basis for the claim but says nothing about advancement. Each claimant attached a copy of the Charge Enterprises, Inc.'s Amended and Restated Bylaws Effective as of January 26, 2023, and various other documents. There is no addendum or other attachment explaining the basis for the claim. None of the claims identifies any amounts alleged to be owed, instead stating that the amounts are undetermined. However, the parties appear to agree that the Potential Indemnitees each assert a claim based upon rights of advancement and indemnification.

In its Third Omnibus Objection, as to each Potential Indemnitees' claim, Charge contends that "[t]his is a contingent indemnification claim that should be disallowed under section 502(e)(1) of the Bankruptcy Code."[19]

The Potential Indemnitees argue that their claims should not be subordinated under Bankruptcy Code section 510(b) because the right to indemnification is contractual, rather than statutory. They also argue that they have met the requirements for advancement and indemnification and that, as a matter of fact, Charge has not met its requirements for denying their advancement request. They assert that Charge never made a preliminary finding of good faith on the Potential Indemnitees' part before it rejected the claim for advancement. Lastly, the Potential Indemnitees argue that the claims should not be disallowed under Bankruptcy Code section 502(e)(1) because they are not contingent claims on which they are co-liable with Charge.

## II.    Jurisdiction

This Court has subject matter jurisdiction over these matters through 28 U.S.C. 157 and 1334. These matters are also all core proceedings pursuant to 28 U.S.C. 157(b)(2) because they concern the administration of the estate and/or the allowance or disallowance of claims against the estate.

---

[19] Third Omnibus Claims Objection, Schedule 5.

### III.    Analysis

### A. Motion to Enforce

As the movants, the D&Os bear the burden of proving that Arena violated the terms of the Plan.[20] To determine whether the D&Os have met that standard, we must determine what the Plan required and whether Arena's March 8th Email met those requirements.

In interpreting the Plan, this Court looks to general contract principles.[21] Section 2.4 of the Plan provides that it is governed by the laws of Delaware.[22] In Delaware, when interpreting a contract, courts "give priority to the parties' intentions as reflected in the four corners of the agreement."[23] Delaware courts first look to see if there is ambiguity in the contract; if there is no ambiguity, courts interpret the contract according to its plain language, giving the terms their ordinary meaning.[24]

Accordingly, we first look to the plain language of the Plan and determine whether it is ambiguous. The relevant provision of the Plan is section 5.1(f). None of the parties contends that the provision is ambiguous, so this Court concludes that it is not and thus interprets the provision according to its plain language.[25]

---

[20] *See In re Irwin*, 558 B.R. 743, 750 (Bankr. D. E.D. Pa. 2016).

[21] *See In re Shenango Gr. Inc.*, 501 F.3d 338, 344 (3d Cir. 2007); *Northeast Gas Generation, LLC*, 639 B.R. 914, 923 (Bankr. D. Del. 2022); *Off'l Comm. of Unsecured Creditors v. Dow Chem. Corp.* (*In re Dow Corning Corp.*), 456 F.3d 668, 676 (6th Cir. 2006) (explaining that a plan is "effectively a new contract between the debtor and its creditors").

[22] D.I. 12.

[23] *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012).

[24] *See id.* at 780; *Bathla v. 913 Mkt., LLC*, 200 A.3d 754, 759-60 (Del. 2018).

[25] *See In re Filene's Basement, LLC*, 621 B.R. 94, 101 (Bankr. D. Del. 2020) (doing the same).

The provision provides that Arena must send the letter to "the D&O." On the contrary, Arena sent its letter to the counsel for Charge, not to any of the D&Os. This mistake on its own may not be significant, considering that Charge's counsel almost immediately relayed the message to Craig Denson and Leah Schweller.[26] However, Arena did not comply with other requirements of the provision either.

Section 5.1(f) also requires that Arena provide the factual and legal basis for the claims it planned to pursue. Arena's March 8th Email lacked any details about the possible lawsuit, and the letter for insurers it attached did not shed any further light. Neither the March 8th Email nor the letter even mentioned that Arena would be the one bringing the suit against the D&Os, when a suit would be brought, where it would be brought, or stated that a suit would be brought in any certain terms rather than hypothetical terms. The attached letter stated certain possible allegations that a potential suit could contain, but it did not expound upon those potential allegations sufficiently to explain "the factual and legal basis" upon which the suit would be based, as is required by section 5.1(f).

Therefore, Arena's March 8th Email did not comply with the requirements for notice under section 5.1(f). Because that email did not comply and Arena points to no other evidence of its compliance with the provision, this Court finds that Arena violated the Plan.

Because Arena violated the Plan, the D&Os urge this Court to order Arena to dismiss its New York Suit with prejudice. They argue that a "bankruptcy court may

---

[26] Although, it seems Andrew Fox and Amy Hanson were not included on the forwarded message from Charge's counsel. Arena's Objection [D.I. 338] Ex. 1 at 95.

enjoin state court actions brought in contravention of its decrees."[27] Further, they argue this Court has the power to do so under Bankruptcy Code section 1142(b), which provides that:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.[28]

This Court will not direct Arena to dismiss the New York Suit with prejudice. Dismissing the suit with prejudice would be "an extreme sanction requiring both a clear record of willful conduct and a finding that lesser sanctions are inadequate."[29] The D&Os have not provided any evidence to support such a finding, and this Court does not see any reason not cited by the D&Os for Arena to be compelled to dismiss the suit with prejudice. It also seems that Arena's failures are of the sort that easily can be cured. Therefore, Arena should stay its proceeding in the New York court until it sends the D&Os a letter that adequately complies with section 5.1(f) of the Plan.

### B. First and Third Omnibus Objections

Next, I turn to the First and Third Omnibus Objections, which concern the indemnification of the Potential Indemnitees. This Court holds that while the Potential Indemnitees' claims for advancement fail to state a claim, their claims for indemnification do not. Further, the indemnification claims are not contingent

---

[27] *Trump Taj Mahal Assocs. v. Alibraham*, 156 B.R. 928, 942 (Bankr. D.N.J. 1993).
[28] 11 U.S.C. § 1142(b).
[29] *Class v. U.S. Bank Nat'l. Ass'n*, 734 Fed. Appx. 634, 635 (11th Cir. 2018).

under Bankruptcy Code section 502(e). However, they are subject to subordination

under Bankruptcy Code section 510(b), so they should be disallowed under the Plan.

### i.    Merits of the Indemnification Claims

To begin, this Court concludes that the Potential Indemnitees did not

properly state a claim for advancement, so those claims should be disallowed.

However, the claims for indemnification need not be evaluated on their merits now

because it is yet unknown how the Class Action and the New York Suit might

ultimately be adjudicated. Delaware General Corporate Law (DGCL)[30] provides for

indemnification of directors and officers in section 145(a):

> A corporation shall have power to indemnify any person who was or is a
> party or is threatened to be made a party to any threatened, pending or
> completed action, suit or proceeding, whether civil, criminal,
> administrative or investigative (other than an action by or in the right
> of the corporation) by reason of the fact that the person is or was a
> director, officer, employee or agent of the corporation, or is or was
> serving at the request of the corporation as a director, officer, employee
> or agent of another corporation, partnership, joint venture, trust or
> other enterprise, against expenses (including attorneys' fees),
> judgments, fines and amounts paid in settlement actually and
> reasonably incurred by the person in connection with such action, suit
> or proceeding if the person acted in good faith and in a manner the
> person reasonably believed to be in or not opposed to the best interests
> of the corporation, and, with respect to any criminal action or
> proceeding, had no reasonable cause to believe the person's conduct was
> unlawful.

DGCL 145(c) then provides for mandatory indemnification when a director succeeds

on the merits of the underlying action:

> To the extent that a present or former director or officer of a corporation
> has been successful on the merits or otherwise in defense of any action,
> suit or proceeding referred to in subsections (a) and (b) of this section,
> or in defense of any claim, issue or matter therein, such person shall be

---

[30] As stated above, Delaware law governs. Plan § 2.4.

indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.

The DGCL also provides for advancement for directors and officers in section 145(e):

> Expenses (including attorneys' fees) incurred by an officer or director of the corporation in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section.

Additionally, Charge's Bylaws provide for indemnification in Article IX, Section 1:

> Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative . . . , by reason of the fact that he or she is or was a director or an officer of the Corporation . . . , whether the basis of such proceeding is alleged action in an official capacity as a director, officer or trustee or in any other capacity while serving as a director, officer or trustee, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware law, . . . against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid in settlement) reasonably incurred or suffered by such Indemnitee in connection therewith . . . .[31]

And Charge's Bylaws provide for advancement in Article IX, Section 2:

> In addition to the right to indemnification conferred in Section 1 of this Article IX, an Indemnitee shall also have the right to be paid by the Corporation the expenses (including attorney's fees) incurred in defending any such Proceeding in advance of its final disposition . . . ; *provided, however,* that, if required by the Delaware General Corporation Law, an Advancement of Expenses incurred by an Indemnitee in his or her capacity as a director or officer . . . shall be

---

[31] Response of Andrew Fox in Opposition to Reorganized Debtor's First Omnibus (Substantive) Objection Seeking to (I) Reclassify the Purported Indemnification Claims as Section 510(B) Claims or (II) Disallow and Expunge the Purported Indemnification Claims on No Liability Grounds ("Fox Response") [D.I. 358] Ex. C.

made only upon delivery to the Corporation of an undertaking . . . , by or on behalf of such Indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal . . . that such Indemnitee is not entitled to be indemnified for such expenses under Section 1 of this Article IX or otherwise.[32]

Delaware courts frequently have interpreted the provisions for indemnification and advancement under the DGCL.[33] Concerning the bylaw provisions, this Court interprets a corporation's bylaws "in accordance with 'the rules used to interpret statutes, contracts, and other written instruments.'"[34] Thus, to begin as this Court does in interpreting all contracts, the terms of the Bylaws' indemnification and advancement provisions are unambiguous, as they are not fairly or reasonably susceptible to more than one meaning.[35]

Because the Potential Indemnitees are requesting Charge to reimburse their expenses before the conclusion of the underlying litigation, this discussion first examines their right of advancement. Although advancement and indemnification are "obviously related,"[36] advancement is different from indemnification, primarily in that advancement usually is expedited, as it can be distributed before the

---

[32] *Id.* Andrew Fox, one of the Potential Indemnitees, also has an Indemnification Agreement with Charge that similarly provides for indemnification and advancement. Fox Response [D.I. 358] Ex. B.

[33] *See, e.g.*, *Perconti v. Thornton Oil Corp.*, No. 18630-NC, 2002 Del. Ch. LEXIS 51 (Del. Ch. 2002) (granting an officer's request for indemnification); *Homestore, Inc. v. Tafeen*, 888 A.2d 204 (Del. 2005) (concluding that the officials were entitled to advancement).

[34] *Alynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 359 (3d Cir. 2014) (quoting *Gentile v. SinglePoint Fin., Inc.*, 788 A.2d 111, 113 (Del. 2001).

[35] *See id.* (stating that a disputed contract term is only ambiguous if it is fairly or reasonably susceptible to more than one meaning).

[36] *Senior Tour Players 207 Mgmt. Co. v. Golftown 207 Holding Co.*, No. 20116, 2004 Del. Ch. LEXIS 22, at *9 (Del. Ch. Mar. 10, 2004); *see also Homestore, Inc.*, 888 A.2d at 211 ("Advancement is an especially important corollary to indemnification . . . . Although the right to indemnification and advancement are correlative, they are separate and distinct legal actions."); *Majkowski v. Am. Imaging Mgmt. Servs.*, 913 A.2d 572, 589 (Del. Ch. 2006) ("Our law has never denied that advancement is a subsidiary concept within the broader topic of indemnification.").

conclusion of the underlying litigation.[37] The two methods also have different requirements, such as an undertaking for advancement.

DGCL 145(e) only requires an undertaking for present directors and officers; it does not have a similar requirement for former directors and officers. However, the provision then says that advancement for former directors and officers may only be paid "upon such terms and conditions, if any, as the corporation deems appropriate."[38] Delaware courts have interpreted this provision to mean that corporations possess the flexibility to advance funds to a former director or officer without requiring an undertaking, but they can also impose a requirement for an undertaking in their own articles of incorporation or bylaws.[39] Under Charge's Bylaws, to obtain an advancement of expenses, the Potential Indemnitees must have provided an undertaking to repay the advancement of expenses if, upon the conclusion of the underlying case, it is determined that they were not entitled to indemnification.[40] The Potential Indemnitees did not provide such an undertaking and have never attempted to cure this defect in their filing, even though they were made aware of it well before (and during) the hearing. Providing an undertaking with a request for advancement is important because it "ensure[s] maximum eligibility for advancement[.]"[41] Because the terms of the Bylaws plainly require the

---

[37] *Holley v. Nipro Diagnostics, Inc.*, No. 9679-VCP, 2014 Del. Ch. LEXIS 268, at *14 (Del. Ch. 2014) (explaining the difference between the Chairman's advancement and indemnification claim).
[38] DGCL 145(e).
[39] *Homestore, Inc.*, 888 A.2d at 211-12.
[40] Fox Response [D.I. 358] Ex. C.
[41] *Day v. Diligence, Inc.*, No. 2020-0076-SG, 2020 Del. Ch. LEXIS 175, at *2 (Del. Ch. May 7, 2020).

Potential Indemnitees to have provided an undertaking and they have not done so, their claims cannot qualify for advancement and are disallowed.

On the other hand, because indemnification concerns reimbursement of attorney's fees and expenses after the fact rather than the advancement of such before or during the fact, the Potential Indemnitees' right to indemnification cannot be determined until the resolution of the underlying litigation.[42] Thus, resolution of the claims for indemnification is premature, and this Court need not determine their merits as of now. Therefore, this Court turns to Charge's alternative objections to the indemnification claims to determine if those objections are dispositive.

### ii.    Contingent, Reimbursement, and Co-liable under Bankruptcy Code Section 502(e)

Next, this Court turns to the argument that the indemnification claims should be disallowed under Bankruptcy Code section 502(e). For a claim to be disallowed under that section, 1) it must be contingent, 2) it must be for reimbursement or contribution, and 3) the claimant must be co-liable with the debtor on the claim.[43]

First, the Potential Indemnitees' claims are contingent because the underlying litigation is still pending. Claims for indemnification are "often considered to be contingent until the underlying litigation is resolved because: the right is typically subject to a requirement that the indemnitee has acted in good

---

[42] *See Homestore, Inc.*, 888 A.2d at 211 ("The right to indemnification cannot be established, however, until after the defense to legal proceedings has been successful on the merits or otherwise."); *see also supra* note 44 and accompanying text (discussing the contingent nature of the indemnification claims).

[43] *See In re Touch Am. Holdings, Inc.*, 409 B.R. 712, 716 (Bankr. D. Del. 2009).

faith and in a manner that he reasonably believed was in the best interest of the company."[44] Because the indemnification claims are still subject to requirements that cannot be resolved until the underlying litigation is resolved, those claims are contingent, fulfilling the first of section 502(e)'s requirements.

Second, under Delaware law, claims for indemnification are claims for reimbursement.[45] Therefore, section 502(e)'s requirement that the claims be for reimbursement is also fulfilled.

However, disallowance of the indemnification claims under section 502(e) fails on the third requirement because the Potential Indemnitees and Charge are not co-liable on the indemnification claims. The co-liability prong addresses the purpose of section 502(e), which is to prevent a double payment by the estate.[46] Fulfilling the co-liability prong of section 502(e) requires "a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay."[47] Here, the Potential Indemnitees request that Charge reimburse them for their costs to defend the lawsuits brought against them. If it were not in bankruptcy and subject to the automatic stay, Charge might be susceptible to co-liability on the *underlying claims*. Nevertheless,

---

[44] *See id.*

[45] *See id.* ("[C]ourts have consistently held that the concept of reimbursement includes indemnity." (internal quotations and alterations omitted)).

[46] *In re Wedtech Corp.*, 85 B.R. at 289 (quoting H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977); S. Rep. No. 95–989, 95th Cong., 2d Sess. 65 (1978), reprinted in 1978 U.S.C. Cong. & Ad. News 5851, 6310).

[47] *In re RNI Wind Down Corp.*, 369 B.R. 174, 188 (Bankr. D. Del. 2007) (quoting *In re Wedtech Corp.*, 85 B.R. 285, 290 (Bankr. S.D.N.Y. 1988)); *see also id.* at 190 (explaining the purpose of 502(e) is to prevent a double payment by the estate).

Charge and the Potential Indemnitees are not co-liable on the *defense costs* for which the Potential Indemnitees request indemnification.[48]

The Potential Indemnitees' situation is similar to the indemnitee in *In re RNI Wind Down Corp.*[49] In that case, the court noted that the debtor may be co-liable with the indemnitee on claims brought by the SEC and DOJ, if it were not for the automatic stay.[50] However, the court held, because the indemnitee was only seeking indemnification of attorney's fees and expenses, the debtor was not co-liable for the indemnification claim.[51] The court explained that "neither the SEC nor the DOJ have a claim against Debtors for [the indemnitee's] defense costs."[52] Likewise, here, while the plaintiffs may have a claim against the Potential Indemnitees for the underlying case, the plaintiffs do not have a claim against Charge for the Potential Indemnitees' attorney's fees. Accordingly, because Charge is not co-liable with the Potential Indemnitees on their indemnification claims, the claims are not disallowed under Bankruptcy Code section 502(e).

### iii.   Subordination under Bankruptcy Code Section 510(b)

Finally, I consider whether the Potential Indemnitees' claims should be subordinated under section 510(b). That section provides:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502

---

[48] *See id.* at 188-190 (finding that because the claimant only requested indemnification connected to his defense of the underlying suit, the company could not be co-liable with him for those expenses).
[49] *Id.*
[50] *Id.* at 188.
[51] *Id.*
[52] *Id.*

on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.[53]

The Third Circuit has set forth a test to determine if a claim should be subordinated.[54] Under that test, courts should determine whether the claim arose from the purchase or sale of securities.[55] In addressing this question, courts should also examine the claim's causal relationship to the purchase or sale of securities and whether subordinating the claim would further the policies underlying section 510(b).[56] Section 510(b) does not require that the injury directly result from the purchase or sale of securities; it only requires some nexus or causal relationship between the claim and the purchase or sale of securities.[57]

---

[53] 11 U.S.C. § 510(b).

[54] *Baroda Hill Invs. v. Telegroup, Inc.* (*In re Telegroup, Inc.*), 281 F.3d 133 (3d Cir. 2002).

[55] *Id.* at 136-37.

[56] *Id.* at 144, n.2.

[57] *In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 104-05 (Bankr. D. Del. 2008); *see also In re Montgomery Ward Holding Corp.*, 272 B.R. 836, 844 (Bankr. D. Del. 2001) ("[T]he critical causal nexus in these cases is the alleged illegal or fraudulent conduct, not simply the claim's origin as one based on the claimant's status as a former stockholder."); *In re Telegroup, Inc.*, 281 F.3d 133, 138 (3d Cir. 2002) (explaining that to arise from the purchase or sale of a security, there must be some nexus or causal relationship between the claim or sale of the security). The Bankruptcy Court for the Southern District of New York has held similarly and explained:

> Initially, the phrase "arising from the purchase or sale" is ambiguous, at least with respect to fraudulent maintenance claims. Something "arises" from a source when it originates from that source. Webster's New International Dictionary 117 (unabridged ed.1976); Black's Law Dictionary 108 (6th ed.1990). The phrase "arising from" signifies some causal connection. *Cf.* Black's Law Dictionary 108 (defining "arises out of"). A literal reading implies that the injury must flow from the actual purchase or sale; a broader reading suggests that the purchase or sale must be part of the causal link although the injury may flow from a subsequent event. Since the fraudulent maintenance claim cannot exist without the initial purchase, the purchase is a causal link. Reasonably well-informed persons could interpret section 510(b) in either sense, and hence, the section is ambiguous.

*In re Granite Partners, L.P.*, 208 B.R. 332, 339 (Bankr. S.D.N.Y. 1997).

In the past, this Court has extended section 510(b)'s subordination of claims to indemnification claims by directors and officers.[58] For example, Charge cites to *In re Mid-American Waste Systems, Inc.*[59] for the proposition that section 510(b) mandates the subordination of claims by directors and officers for indemnification of reasonable expenses in defending litigation against them that arose from the rescission of a purchase or sale of the debtor's securities.[60] There, this Court explained that the rationale for section 510(b) subordination is not limited to preventing shareholder claimants from improving their position; rather, it is also meant to subordinate claims based on risk allocation.[61] Under those principles of risk allocation, this Court reasoned, subordination of a director's or officer's indemnification claim arising out of a purchase or sale of securities would further the policies that underly section 510(b).[62]

This Court then reiterated that reasoning in *In re Touch American Holdings, Inc.*,[63] again finding that directors' and officers' indemnification claims should be subordinated under section 510(b).[64] There, this Court explained that subordination requires consideration of the underlying nature of the claims.[65] Even though those plaintiffs did not purchase the stocks on the open market, because the plaintiffs

---

[58] *In re Montgomery Ward Holding Corp.*, 272 B.R. 836, 844 (Bankr. D. Del. 2001) ("[T]he critical causal nexus . . . [is] not simply the claim's origin as one based on the claimant's status as a former stockholder.")
[59] 228 B.R. 816 (Bankr. D. Del. 1999).
[60] *Id.* at 824.
[61] *Id.* at 825-26.
[62] *Id.* at 824-26.
[63] 381 B.R. 95.
[64] *Id.* at 106.
[65] *Id.* at 104.

earned stocks as part of a matching contribution under the chapter 11 liquidation plan, they nonetheless exchanged value for the stock, bringing the transaction into the definition of a purchase or sale of securities.[66] Then, because the directors and officers were requesting indemnification for defense of the litigation arising from that transaction, the indemnification claims also arose from the purchase or sale of securities.[67]

The present case follows a similar pattern, whereby the indemnification claims at issue ultimately arose from the purchase or sale of securities and thus should be subordinated. Under Third Circuit jurisprudence, whether a claim arises from the sale or purchase of securities "require[s] some nexus or causal relationships between the claims and the purchase of securities."[68] Such nexus is present here between the purchase of Charge's stock and the indemnification claims. For both sets of claims, a purchase or sale of securities caused the litigation, which caused the indemnification claims.

First, in the Class Action, plaintiffs alleged that the Potential Indemnitees made misrepresentations concerning Charge's relationship with KORR Acquisitions Group. The plaintiffs alleged that those misrepresentations were in violation of the Securities Exchange Act section 10(b), which makes it illegal to use any deceptive device in connection with the purchase or sale of securities, and 20(a), which establishes joint and several liability.[69] Because the plaintiffs explicitly allege that

---

[66] *Id.*
[67] *Id.*
[68] *In re Telegroup, Inc.*, 281 F.3d 133, 138 (3d Cir. 2002).
[69] 15 U.S.C. §§ 78j(b), 78t(a).

the misconduct was in violation of section 10(b), a law imposing restrictions on the purchase and sale of securities, the litigation arose from the purchase or sale of securities. More simply, the plaintiffs' claims arose out of alleged misconduct during the Potential Indemnitees' sale of securities. The Potential Indemnitees' indemnification claims then arose out of the Class Action, and thus ultimately arose out of the same alleged misconduct in the sale of securities.

Similarly, in the New York Suit, secured creditors and equity holders alleged that the Potential Indemnitees committed fraudulent inducement/ misrepresentation, negligent misrepresentation, and breach of fiduciary duties in their sale of securities. Again, because the claims arose out of alleged misconduct during the Potential Indemnitees' sale of securities, and because the indemnification claims arose out of that litigation, the indemnification claims ultimately arose out of that same alleged misconduct and thus from the purchase or sale of securities.

Both suits therefore arose out of alleged misconduct during the Potential Indemnitees' sale of securities, and their litigation claims arose from that litigation. That misconduct during the sale of securities thus led to the indemnification at issue here. The claims for indemnification in connection with both suits could not have arisen but for the plaintiffs' purchase of Charge's stock.[70] Accordingly, a causal connection exists here, and the indemnification claims arose out of the purchase or sale of a security and must be subordinated under section 510(b).

---

[70] *In re Telegroup, Inc.*, 281 F.3d at 138 (finding that the claim at issue arose from the purchase or sale of securities because it would not have arisen but for the purchase of the debtor's stock).

Potential Indemnitees argue that their indemnification claims should not be subordinated because they arose from an indemnification contract rather than solely by operation of a statute. I reject this argument for three reasons: 1) the authority that the Potential Indemnitees claim excludes contract claims does not support such a reading, 2) this Court has specified that the basis of a claim in contract versus in tort does not exclude it from section 510(b) subordination, and 3) the parties cite no case that supports the notion that the basis of a claim in contract versus statute might affect whether it can be subordinated either.

In support of this contention, the Potential Indemnitees cite only to language in *In re Mid-American Waste* for the proposition that the Court there found that a contract claim is not subject to section 510(b).[71] That appears to be a misreading of the opinion. There, the fairest reading is that the Court was merely paraphrasing and responding to an argument made by one of the parties. It was not the Court's finding that contract claims are not subject to section 510(b).[72]

---

[71] *In re Mid-American Waste Sys.*, 228 B.R. at 826. Although the Potential Indemnitees do no clarify which precise language they intended to cite, from what I can gather, they meant to point to the following language:

> Natwest argues that . . . if a shareholder had some sort of reimbursement or contribution claim as a result of the decrease in value of the shareholders' securities that *did not* arise from the purchase or sale of a security, such as a contractual right to indemnification independent of the purchase of the security, such shareholder could convert its securities claim into a general unsecured claim by pursuing its rights under the indemnification contract. . . . I find this argument to be a speculative exercise and in conflict with the plain language of § 510(b). . . . Furthermore, as I read it, the "some sort" of claim suggested by NatWest is not a securities law claim; it is a contract claim not within the scope of § 510(b).

*Id.* (emphasis added).

[72] Conversely, the Court seems to reject that interpretation. *See id.* In finding that the hypothetical Natwest posed was incorrect, the Court explained that such a contract claim could not be subordinated under section 510(b) because in that hypothetical, Natwest explicitly said the claim

In addition, Potential Indemnitees do not address cases where this Court has already found that section 510(b) subordination is not limited to tort claims, but can include contract claims as well.[73] In *In re International Wireless*, this Court noted that "section 510(b) contains no limitation to claims based on tort."[74] For that reason, whether a claim is based on tort or contract is not relevant, and the Potential Indemnitees' argument on that theory fails.[75]

Therefore, because the Class Action and the New York Suit are based on the purchase or sale of securities and the indemnification claims arose from those suits, the Potential Indemnitees' indemnification claims arose from the purchase or sale of securities under section 510(b) and should be subordinated. Accordingly, regardless of whether they would have merit after the resolution of the underlying lawsuits, as Class 5 Claims, the Potential Indemnitees' indemnification claims are canceled, released, and extinguished, and are entitled to no distribution.

## IV.   Conclusion

For the foregoing reasons, this Court orders that (i) the Motion to Enforce is granted; (ii) the First Omnibus Objection regarding the Potential Indemnitees' advancement claims for failure to state a claim is sustained; (iii) the Third Omnibus Objection regarding the disallowance of Potential Indemnitees' indemnification

---

"did not arise from the purchase or sale of the security." *Id.* The Court did not find that the reason the claim could not be subordinated was that it was a contract claim. *See id.* Rather, it found that the reason the claim could not be subordinated was because it did not meet the statutory definition, which requires that it arise out of the purchase or sale of securities. *See id.* A claim that "did not arise from the purchase or sale of a security" cannot, by definition, meet that requirement, regardless of whether it is a contract claim, a tort claim, or anything else.

[73] *In re Int'l Wireless Comms. Holds., Inc.*, 257 B.R. 739, 746 (Bankr. D. Del. 2001).

[74] *Id.*

[75] *Id.*

claims under Bankruptcy Code section 502(e) is overruled; (iv) the First Omnibus

Objection to subordinate the Potential Indemnitees' indemnification claims under

Bankruptcy Code section 510(b) is sustained; and (v) the Potential Indemnitees'

indemnification claims are canceled, released, and extinguished as Class 5

Claims under the Plan.

_____
Dated: December 16, 2024                Thomas M. Horan
Wilmington, Delaware                    United States Bankruptcy Judge